IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CRAIG DONNELL FOSTER, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-17-3261 |
| SGT. DADDYSMAN, et al., | * | |
| Defendants. | * | |

*****

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Sgt. Jason Daddysman ("Sgt. Daddysman") and David C. Robey's ("Ofc. Robey") Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 22).[1] The Motion is ripe, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons that follow, the Court will grant the Motion.

## I. BACKGROUND[2]

On September 6, 2016, Plaintiff Craig Donnell Foster returned to his housing unit in Western Correctional Institution ("WCI") in Cumberland, Maryland after a trip to the

---

[1] Also pending are Defendants' Motion for Extension of Time (ECF No. 20) and Plaintiff Craig Donnell Foster's Motion for Default Judgment (ECF No. 24). Because Defendants' Motion for Extension of Time was unopposed and reasonable, the Court will grant it nunc pro tunc. Foster filed his Motion after Defendants filed their dispositive Motion. Because Defendants responded to the Complaint, and because the Clerk never entered default in this case, the Court will deny Foster's Motion.

[2] Unless otherwise noted, the facts outlined here are set forth in Foster's Complaint (ECF No. 1). To the extent the Court discusses facts that Foster does not allege in his Complaint, they are uncontroverted and the Court views them in the light most favorable to Foster. The Court will address additional facts when discussing applicable law.

prison commissary.³ (Compl. Ex. A. ["Compl. Addend."] at 1, ECF No. 1-1). Upon entering the housing tier, Foster attempted to gain access to his assigned cell via the intercom system. (Id.). Sgt. Daddysman, in what Foster alleges was an abusive manner, asked why Foster had not used the intercom at the front of the tier instead of the one he used. (Id.). Foster then sought out the tier officer, Ofc. Robey, to request an Administrative Remedy Process ("ARP") form and continuation sheets. (Id.). A year earlier, Foster had written an ARP regarding Sgt. Daddysman's "abusive and aggressive nature." (Id. at 2). When Ofc. Robey asked Foster why he needed an ARP form, Foster explained that he intended to file a complaint about Sgt. Daddysman because "he has to go." (Id. at 1). Ofc. Robey refused to give Foster the forms and tried to talk him out of filing a complaint against Sgt. Daddysman. (Id.).

Sometime thereafter, Sgt. Daddysman placed Foster in handcuffs, removed him from the housing unit, and placed him in segregation. (Id.). Foster was charged with violating institutional rules as a result of Ofc. Robey and Sgt. Daddysman's "false reports." (Id.).

In the wake of the September 6, 2016 incident, Foster was charged with violating WCI Rules 100 (engage in a disruptive act), 104 (use intimidating, coercive, or threatening language), 312 (interfere with or resist the performance of staff duties to include a search of a person, item, area, or location), 400 (disobey an order), 405 (demonstrate disrespect or use vulgar language), and 503 (disobey a specifically cited facility Category V rule not

---

³ Foster is now confined in Baltimore City Correctional Center. (Pl.'s Oct. 12, 2018 Ltr., ECF No. 28).

listed in this regulation as a rule violation). (Defs.' Mot. Ex. 3 ["Prison Adjuc. Record"] at 1, 3.).[4] At the September 19, 2016 hearing on the charges, Foster pleaded guilty to violating Rules 104, 312, 400, and 405. (Id. at 4–5). He acknowledged his plea was voluntary and that he was waiving most of his appeal rights. (Id.). Per the plea agreement, Foster's punishment included sixty days' segregation and the loss of sixty days' good conduct credit. (Id.).

In addition to what is stated in the plea agreement, Foster asserts he lost his preferred job assignment, was removed from a lateral transfer list, and was transferred to "the Gang Unit" for four months. (Compl. Addend. at 2). Further, Foster was "red flagged" as a threat to staff, which disqualified him for "honor" programming and job assignments. (Id.). He alleges that he began suffering "stress disorders, PTSD with feelings of fear, anxiety, hopelessness, depression, insomnia, sweats, and panic attacks." (Id.).

On November 3, 2017, Foster filed his Complaint against Sgt. Daddysman and Ofc. Robey. (ECF No. 1). On January 16, 2018, Foster filed a Supplement to the Complaint to specify his damages request. (ECF No. 7). The Court construes the Complaint and Supplement to allege, pursuant to 42 U.S.C. § 1983, that Defendants violated Foster's

---

[4] Defendants include as an Exhibit to their Motion the Notice of Inmate Rule Violation Sgt. Daddysman submitted under oath following the September 6, 2016 incident. Foster disputes Sgt. Daddysman's sworn narrative of what happened that day, but Foster does not dispute the disposition of the charges that resulted from the incident. (See Pl.'s Opp'n at 3, ECF No. 26). As those records and the material facts they contain are not subject to a genuine dispute, the Court considers them in resolving Defendants' Motion.

rights under the First Amendment to the U.S. Constitution by retaliating against him for filing the ARP against Sgt. Daddysman.[5]

On June 6, 2018, Defendants filed their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 22). On June 21, 2018, Foster filed an Opposition. (ECF No. 26). To date, the Court has no record Defendants filed a Reply.

## II. DISCUSSION

### A. Conversion of Defendants' Motion

Defendants style their Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No.

---

[5] Foster appears to assert additional claims in his Opposition, including civil conspiracy and excessive force in violation of the Eighth Amendment to the U.S. Constitution. (Pl.'s Opp'n at 3, 6). Foster did not include these claims in the Complaint, and therefore the Court will not address them. See Hurst v. D.C., 681 F.App'x 186, 194 (4th Cir. 2017) (noting that "a plaintiff may not amend [his] complaint via briefing").

4

ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

5

Here, the Court concludes that both requirements for conversion are satisfied. Foster was on notice that the Court might resolve Defendants' Motion under Rule 56 because Defendants styled their Motion in the alternative for summary judgment and presented extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464. In addition, the Clerk informed Foster about the Motion and the need to file an opposition (June 7, 2018 Letter, ECF No. 23). Foster filed an Opposition that included materials in support of his claims but did not include a request for more time to conduct further discovery. Because the Court will consider documents outside of Foster's Complaint in resolving Defendants' Motion, the Court will treat the Motion as one for summary judgment.

**B.** **Standard of Review**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be

made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**C. Analysis**

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). To prevail on a § 1983 claim, a plaintiff must demonstrate a deprivation of rights guaranteed by the Constitution or laws of the United States and that the alleged deprivation was committed by a "person" acting under color of state law. 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988) (first citing Parratt v. Taylor, 451 U.S. 527, 535 (1981); and then citing Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978)). "In analyzing a § 1983 claim, a court must first identify 'the specific constitutional right allegedly infringed.'" Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 343 (D.Md. 2011) (citing Albright, 510 U.S. at 271).

Foster brings a § 1983 claim for retaliation in violation of the First Amendment. "Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." Henson v. Graham, No. JKB-17-0886, 2018 WL 1123693, at *11 (D.Md. Feb. 28, 2018) (quoting ACLU of Maryland, Inc. v. Wicomico Cty., 999 F.2d 780, 785 (4th Cir. 1993)). Such a claim is grounded in the First Amendment. See Booker v. S.C. Dep't of Corr., 855 F.3d 533, 540 (4th Cir. 2017) ("if an inmate exercises his First Amendment right when he files a prison grievance, retaliation against him for doing so is unconstitutional."), cert. denied, 138 S.Ct. 755 (2018). A prisoner does not have a constitutional entitlement to or liberty interest in accessing a grievance procedure, see Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), but his First Amendment right is violated

8

"when he is retaliated against for submitting a grievance pursuant to an existing grievance procedure." Booker, 855 F.3d at 541. Still, because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct,'" prisoner retaliation claims "must therefore be regarded with skepticism." Adams, 40 F.3d at 74.

To prove a claim of retaliation, a plaintiff must show: (1) "he engaged in protected First Amendment activity"; (2) "defendants took action that adversely affected him"; and (3) "a causal relationship between the protected activity and the defendant's conduct." Henson, 2018 WL 1123693, at *11 (citing Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017)). The showing of adversity is "essential." ACLU of Maryland, 999 F.2d at 785. The inmate must show that the alleged act of retaliation had a chilling effect on his exercise of the right asserted. Id. at 785–86. The plaintiff must also demonstrate that the protected activity was the "'but for' cause of the adverse action alleged." Henson, 2018 WL 1123693, at *11 (quoting Ridpath v. Bd. of Gov'nrs Marshall Univ., 447 F.3d 292, 318 (4th Cir. 2006)). "In the prison context, the plaintiff must establish that the prison authorities' retaliatory action did not advance the institution's legitimate goals of preserving internal order and discipline or that it was not narrowly tailored to achieve such goals." Henson, 2018 WL 1123693, at *11 (citing Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985)).

Here, Foster has not proven the "essential" adversity element of his retaliation claim. Foster does not dispute that, following the September 6, 2016 incident and the adjudication of the resulting charges, he was able to file a least one more ARP against Sgt. Daddysman. Given that sequence of events, the alleged retaliation did not chill Foster's

exercise of his First Amendment rights. See ACLU of Maryland, 999 F.2d at 785–86. Further, Foster has not proven the causation element. Although Foster disputes Defendants' version of what happened on September 6, 2016, he does not dispute the disposition of the resulting charges. Specifically, he pleaded guilty to most of the rule violations with which he was charged, admitting to, among other behavior, using intimidating, coercive, or threatening language and interfering with or resisting the performance of staff duties. Foster cannot then establish, as required, that his ARP against Sgt. Daddysman a year earlier was the "but for" cause of the disciplinary action, or that the punishment "did not advance the institution's legitimate goals of preserving internal order and discipline or that it was not narrowly tailored to achieve such goals." Henson, 2018 WL 1123693, at *11.

Viewing the undisputed facts in the light most favorable to Foster, the Court concludes he has not made out a claim of retaliation. Thus, Defendants are entitled to judgment in their favor. Accordingly, the Court will grant Defendants' Motion.

### III. CONCLUSION

For the foregoing reasons, Defendants Sgt. Daddysman and Ofc. Robey's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 22), construed as a motion for summary judgment, is granted. A separate Order follows.

Entered this 4th day of March, 2019.

/s/
George L. Russell, III
United States District Judge